AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

Eastern District of Missouri

FEB *19* 2020

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| In the Matter of the Search of <br><br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* <br><br> Precision Location Information; Subscriber & <br> Transactional Records; Cell Site Information; Pen <br> Register & Trap-and-Trace for Phone # (314) 267-0816 | ) <br> ) <br> ) <br> )    Case No.  4:20 MJ 3078 NCC <br> ) <br> ) <br> ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ Kansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, USC Section 841, 846 | Conspiracy to possess with intent to distribute controlled substances. |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert B. Honnet, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 02/19/2020 _____

_____
*Judge's signature*

City and state: _____ St. Louis, MO _____

Noelle C. Collins, US Magistrate Judge
*Printed name and title*

FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FEB 19 2020

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION; )
SUBSCRIBER AND TRANSACTIONAL )
RECORDS; CELL SITE INFORMATION; )
AND FOR A PEN REGISTER AND TRAP )
AND TRACE DEVICES FOR PHONE )
NUMBER **(314) 267-0816**. )

No. 4:20 MJ 3078 NCC

**FILED UNDER SEAL**

## AFFIDAVIT FOR INITIAL APPLICATION

I, Special Agent Robert B. Honnet, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with a cellular telephone **(314) 267-0816** (hereinafter referred to as the "**subject cellular telephone**") to require **Sprint** (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the subject cellular telephone, as described in Attachment B to the requested warrant and order.

1

2.      I am a Special Agent with the Drug Enforcement Administration, and have been since August 2016.   During the course of my law enforcement experience, I have participated in numerous investigations involving controlled substances, including complex investigations involving drug trafficking organizations dealing in cocaine, methamphetamine, heroin, marijuana, and other controlled substances. As part of my training at Quantico, I attended courses on Asset Forfeiture and financial investigations. Prior to becoming a Special Agent, I served as a Tennessee Alcoholic Beverage Commission Special Agent for five (5) years, assigned as a Task Force Officer to a DEA High Intensity Drug Trafficking Area (HIDTA) Task Force.   Prior to this, I served as a Jefferson County Sheriff's Office Deputy Sheriff, in Birmingham, Alabama for one (1) year. During that time, I had extensive training in narcotics investigations and financial investigations. I've also conducted several narcotics investigations leading to the arrest and conviction of offenders and the seizure of narcotics and drug proceeds.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.   This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the subject cellular telephone.

2

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with violations of Title 21, United States Code, Section(s) 846 and 841(a)(1) (Conspiracy to Possess with Intent to Distribute a Controlled Substance(s) and Possession with Intent to Distribute a Controlled Substance(s)) and other offenses of Federal law (hereinafter referred to as "**the subject offenses**"), by **Jamore CLARK**, **Jason JONES**, **Arie GRAHAM**, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## BACKGROUND CONCERNING WIRELESS PROVIDERS

6.      Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a

3

cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

    c.    Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

    d.    Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the

4

cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f.     Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

5

g.     In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States.   The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

7.     The United States, including Drug Enforcement Administration (hereinafter DEA),, is conducting a criminal investigation of **Jamore CLARK, Jason JONES, Arie GRAHAM,** and others known and unknown, regarding the commission of the subject offenses.

8.     On September 16, 2019, investigators from the DEA St. Louis Division (SLDO) Group 38 were contacted by Homicide Detectives of the St. Louis County Police Department (SLCPD) in reference to narcotics discovered during an investigation into the murder of Eboni Brown.  Investigators were informed that, while searching Brown's residence for the perpetrator and/or any firearms which may have been used in the shooting death of Brown, SLCPD Detectives discovered, in plain view, seven (7) separate duffle bags/backpacks containing methamphetamine. Upon arrival, DEA investigators were directed to the basement of the residence, and informed by SLCPD Detectives had also discovered a chest of drawers containing drug-paraphernalia (boxes of rubber gloves, masks, boxes of plastic baggies), multiple plastic blenders containing a white

6

powdery substance believed to be Fentanyl, an AR-15 rifle and a ZTE flip style phone.  In addition, Detectives discovered, in plain view, a large hydraulic press, an electronic money counter, and a locked Union brand safe.  (Affiant's note: Your affiant is aware, through training and experience, that the items discovered in the chest of drawers, as well as the hydraulic press, signify that the basement was being utilized for the clandestine production and packaging of kilogram quantity amounts of Fentanyl.)  In addition to the items discovered by SLCPD Detectives in the basement of the residence, a search of the master bedroom of the residence resulted in the discovery of a semi-automatic handgun and two (2) cellular telephones.  SLCPD Detectives also seized a 2013 Dodge Charger, present outside of the residence, which was believed to be owned and operated by Anderson Stallings.  A search of the seven (7) duffle bags/back packs, by members of the SLCPD Investigators revealed a total of 172 separate clear plastic baggies, each weighing approximately one (1) pound and containing a clear crystalized substance.  The 172 plastic baggies, each believed to contain approximately one (1) pound of ice-methamphetamine, seven (7) bags originally containing the aforementioned plastic bags, drug-residue covered paraphernalia, hydraulic press, and money counter was seized and maintained by DEA investigators.  The Dodge Charger, locked Union brand safe, two (2) firearms, two (2) cellular telephones, and the ZTE flip style phone were seized and maintained by the SLCPD.

9.     On September 17, 2019 SLCPD Detectives obtained a State of Missouri search warrant for the locked Union brand safe seized from 419 Thrift Avenue on September 16, 2019.  At approximately 1:30 p.m., SLCPD Detectives, as well as investigators of DEA Group 38, executed the aforementioned search warrant on the locked Union brand safe.  Upon accessing the safe, the following items were discovered and seized: suspected drug ledgers, four (4) separate clear plastic baggies containing a total of approximately 1.6 kilograms of Fentanyl, two (2) clear

7

plastic bags containing approximately one (1) pound of ice-methamphetamine, one (1) Glock 10mm pistol, one (1) Springfield Armory .45 caliber pistol, and $210.40 in U.S. Currency (USC). All of the aforementioned items were seized and maintained by the SLCPD for DNA analysis and safekeeping.

      10.    On September 18, 2019 and September 19, 2019, SLCPD Detectives, as well as investigators from DEA, conducted interviews of members of Eboni Brown's family, in relation to any information which may identify potential suspects in her homicide.  Cooperating family members reported that **Jamore "Rocc" CLARK**, hereinafter "**CLARK**" had access to Brown's home.  Family members informed investigators that they (family members) were informed that Brown was allowing **CLARK** to store narcotics and money in the basement of her home. In return, **CLARK** paid Brown's monthly rent.  Additionally, family members stated that Brown distributed marijuana, which she reportedly acquired from **CLARK**.  Brown specifically informed family members that **CLARK** actively distributed Fentanyl, stored bulk currency in a safe located in the basement, and was in the process of installing video surveillance equipment in her (Brown's) home.  Brown's family members reported that they have observed **CLARK** in possession of multiple large stacks of bulk currency while at Brown's residence and have additionally, on multiple occasions, observed **CLARK**, while in the basement of the residence and wearing a surgical mask and latex gloves; placing "rocks" of an unknown substance into multiple blenders, and blending intermittently until the "rocks" had become a powder. (Affiant's note: From training and experience, your affiant is aware that Brown's family members are describing the clandestine preparation of Fentanyl for distribution.)  Upon grinding the "rocks" into a powder, family members observed **CLARK** and two (2) other (unknown) black males place the powdery substance into multiple clear zip-lock bags.  Family members also reported seeing **CLARK** utilize

8

an electronic money counter, while in the basement of the residence, to count large stacks of money before rubber banding the money into smaller stacks and placing the smaller stacks into a black trash bag. The family members informed investigators that while **CLARK** engaged in these narcotics related activities, he (**CLARK**) was in possession of a pistol, which he placed on top of a bookcase, along with multiple cellular telephones. (Affiant's note: This is the same bookcase in which the electronic money counter was discovered on September 16, 2019.) Family members additionally provided a cellular telephone number which they utilized to contact **CLARK**.

11.    Throughout the investigation into **CLARK**, and his (**CLARK's**) St. Louis based drug-trafficking organization (DTO), **CLARK** was identified as a member of the Crips street gang, and multi-kilogram fentanyl SOS for the St. Louis based Geraldine Street Crips gang member **Jason JONES**, hereinafter "**JONES**".

12.    In November of 2019, during an interview with a SLCPD Confidential Source[1], hereinafter referred to as "CS," **JONES** was identified as a high-ranking member of the Geraldine Street Crip street gang, responsible for distributing multiple ounces of fentanyl throughout the Walnut Park area of the city of St. Louis. The CS informed investigators that **JONES** no longer lives in the Walnut Park area, but is aware through conversations with **JONES**, that **JONES** utilizes multiple narcotic and bulk cash "stash" locations, in the Walnut Park area.

13.    During the course of this investigation, investigators utilized the CS to conduct two (2) separate controlled purchases of ounce quantities of fentanyl from **JONES**. Investigators

---

[1] The CS' information has been corroborated through physical surveillance, consensual phone calls, either monitored or recorded by investigators between CS and **JONES**, and verified through controlled purchases. The information provided by the CS relative to **JONES** has never been found to be false. The CS has no prior felony convictions, but has active charges pending in Federal court, and his/her cooperation is for the purpose of sentencing consideration for the aforementioned charges.

9

conducted surveillances of these controlled purchases and recorded phone calls between the CS and **JONES** over **JONES'** telephone.

14.     Investigators were able to prepare an affidavit requesting the courts permission to monitor **JONES'** telephone based on the controlled purchases of fentanyl while utilizing the CS, as well as the overall investigation.  On February 3, 2020, the Honorable Stephen R. Clark, United States District Judge, Eastern District of Missouri, signed an order authorizing the investigative team to monitor wire and electronic messaging of the cellular telephone utilized by **JONES**.  On February 3, 2020, investigators began monitoring **JONES'** telephone at the DEA facility located in St. Louis, Missouri.  Monitoring of **JONES'** telephone is ongoing with the authorization scheduled to expire on March 5, 2020.

15.     While monitoring **JONES'** telephone, investigators intercepted numerous pertinent telephone and text messages between **JONES** and several identified and unidentified subjects who were attempting to purchase various quantities of ice-methamphetamine and fentanyl from **JONES**.  In addition to conversations with subjects attempting to purchase drugs from **JONES**, investigators intercepted telephone conversations between **JONES** and **JONES'** courier, **Arie GRAHAM** (hereinafter "**GRAHAM**"), during which, **JONES** instructed **GRAHAM** to obtain and transport currency, as well as obtain narcotics from different unknown locations and transport the aforementioned narcotics to various unidentified distributors.  During the interception of **JONES'** telephone, investigators have observed that **JONES** rarely interacts directly with his (**JONES'**) distributors, and utilizes **GRAHAM** for the purpose of directly supplying narcotics to, and obtaining currency from, his (**JONES'**) distributors.

16.     Summaries and quotations of certain calls of wire and electronic communications intercepted during that period of interception are included in this affidavit, and are based on

preliminary summaries prepared by wiretap monitors. To the extent quotations are used in the descriptions below, the quoted segments are based on "line sheets" and review of recordings are not final or certified transcripts. In addition, all dates and times are approximate and based on the monitoring equipment at the time the call was intercepted and only a sampling of the relevant calls are described. Where a portion of the intercepted call was unintelligible upon by wire monitors upon their initial review of the call, that portion of the call is denoted herein with [U/I].

17. On February 4, 2020, at 8:54 a.m. (Session #12), **JONES** (utilizing cellular telephone number (314) 614-6381) received an incoming call from **GRAHAM**, (utilizing cellular telephone number (314) 326-2597[2], hereinafter "the predecessor telephone"). The following is a transcript of the intercepted telephone call:

> [...]
>
> **JONES:** Uh, grab them things (ounces of fentanyl) from, Tez. Can you do it, or you got something to do?
>
> [...]
>
> **JONES:** So, he already got ten (10) done (10 ounces of fentanyl prepared) and Kevin want three (3), right now.
>
> **GRAHAM:** Yeah, T, T, T say...
>
> **JONES:** T.
>
> **GRAHAM:** He ready too today.
>
> **JONES:** He say what?

---

[2] Requested subscriber information identified this Sprint based cellular telephone numbers is registered to **Arie GRAHAM** at 4921 Theodore Avenue in St, Louis, Missouri. During a surveillance operation on February 7, 2020, investigators identified **GRAHAM**, following a telephone conversation between him and **JONES**. **GRAHAM** was identified via State of Missouri Driver's License photograph, and observed operating a vehicle in which he (**GRAHAM**) received numerous historical City of St. Louis traffic citations.

**GRAHAM:**  He say he probably going to be ready today, too.

**JONES:**  How many?

**GRAHAM:**  Shit, I think was the same, what, like eight (8) or something like that.

**JONES:**  He gonna have to, yeah, we ain't got ten (10) of them done at that. We ain't got Kev-o's and shit, it gonna be like seven (7) of them, so.

**GRAHAM:**  Yeah.

**JONES:**  But, I'm fixing to call Tez right now and tell him you fixing to be on the way.

**GRAHAM:**  Aight.

[...]

18.     Based upon my training and experience, the above-referenced conversation consists of **JONES** initially requesting that **GRAHAM** obtain narcotics from an unknown individual, identified only as "Tez." **JONES** later informs **GRAHAM** that "Tez" has ten (10) ounces of fentanyl prepared, and that "Kevin" has requested three (3) ounces, and that "T" should be provided with his "T's" typical amount of eight (8) ounces. **GRAHAM** reminds that they are only obtaining ten (10) ounces from "Tez" and that "T" will only be provided with seven (7) ounces. Upon confirming this, **JONES**, informs **GRAHAM** that he will be contacting "Tez" to let "Tez" know that **GRAHAM** is on his way to meet with "Tez."

19.     On February 4, 2020, at 9:23 a.m. (Session #14), **JONES** utilizing cellular telephone number (314) 614-6381) places an outgoing call to **GRAHAM** (utilizing the predecessor telephone). The following is a transcript of the intercepted telephone call:

**GRAHAM:**  Hello?

**JONES:**  Talk to him (Kev-o)?

12

> **GRAHAM**: Yeah, I'm pulling up on Kev-o now.
>
> **JONES**: Oh really Kev-o want it? Damn! Oh he moved faster than three (3). I'm headed to uh, I'm headed to big dude's crib out here in the county. Grab that gas (high-grade marijuana), man. I ain't got nothing.
>
> **GRAHAM**: Aight.
>
> [..]

20.     Based upon my training and experience, the above-referenced conversation appears to indicate that **GRAHAM** has already picked up the ten (10) ounces of fentanyl from "Tez," and just provided "Kev-o" with the three (3) ounces as previously requested by **JONES**. **JONES** is surprised at **GRAHAM's** speed, and informs **GRAHAM** that he is traveling to obtain marijuana from an unknown individual.

21.     On February 14, 2020, at 6:52 p.m. (Session #663), **JONES** (utilizing cellular telephone number (314) 614-6381) places an outgoing call to **GRAHAM**, utilizing (the predecessor telephone). The following is a transcript of the intercepted telephone call:

> **GRAHAM**: Cat-boy just called me and I told him I get off in 20-30 minutes.
>
> **JONES**: Ah, what he said?
>
> **GRAHAM**: He wanted five (5) (five ounces of fentanyl) of them.
>
> **JONES**: How many you got?
>
> **GRAHAM**: I think I got five (5) or six (6) of them.
>
> **JONES**: Yup, at momma's, yup. I'm fixing to get out in a minute, it's seven o'clock (7:00) now.
>
> [...]

13

**GRAHAM**:   Hey, I didn't call you from my other phone, did I?

**JONES**:   No.

**GRAHAM**:   I'm fixing to call you right now, so you can lock me in.

**JONES**:   Alright.

22.    Based upon my training and experience, the preceding conversation indicates that **GRAHAM** has been contacted by one (1) of **JONES's** fentanyl customers, "Cat-boy." **GRAHAM** confirms that he has spoken with "Cat-boy," who has requested five (5) ounces of fentanyl. **GRAHAM** confirms that he has between five (5) and six (6) ounces of fentanyl at his mother's house. Later in the telephone conversation, **GRAHAM** asks whether has called **JONES** from his (**GRAHAM's**) new telephone number (the **subject cellular telephone**). After **JONES** informs **GRAHAM** that he has not, and **GRAHAM** informs **JONES** that he (**GRAHAM**) will call **JONES** from the his new telephone (the **subject cellular telephone**). **GRAHAM** then requests that **JONES** store the new telephone number.

23.    On February 14, 2020, at 6:55 p.m. (Session #664), **JONES** (utilizing cellular telephone number (314) 614-6381) receives an incoming call from **GRAHAM**, utilizing (the **subject cellular telephone**[3]). The following is a transcript of the intercepted telephone call:

**JONES**:   Yeah?

**GRAHAM**:   Yeah, cuz. It's me.

**JONES**:   Aight.

**GRAHAM**:   Bye-bye.

**JONES**:   Ok, fool.

---

[3] On February 16, 2020, your affiant issued an administrative subpoena to Sprint requesting the subscriber information pertaining to the **subject cellular telephone**. As of February 17, 2020, you affiant has yet to receive the requested information from Sprint.

24.     Based upon my training and experience, the preceding conversation consists of **GRAHAM** contacting **JONES** from the "new number," so that **JONES** would have the "new number" for purposes of future communications.  Since this call, **GRAHAM** and **JONES** have stopped communicating over the predecessor telephone, but have continued to communicate over the **subject cellular telephone.**

25.     Having the continued ability to locate and monitor the movements of the **subject cellular telephone** will allow investigators to continue to locate, and identify, **GRAHAM**, and enable investigators to identify members of the organization above **JONES**, any other co-conspirators, and possible stash house locations where the controlled substances are being stored.

26.     The investigation has demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (the subject offenses).  It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone,** thereby assisting in the location of **GRAHAM** if traveling on behalf of the organization to transport drugs and/or currency, the identification of additional co-conspirators, and assist with the ability to located **GRAHAM**, and therefore provide the ability to seize any drugs and/or currency. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation

## CONCLUSION

27.     Based on the above information, your affiant submits that there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with the commission of the subject offenses, by **Arie GRAHAM**, and others known and unknown.  There is also probable cause to believe that the location information described in Attachment B to the

15

requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

28.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

29.     The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

2/19/20
DATE

Robert B. Honnet
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this _19th_ day of February, 2020.

NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

16

## ATTACHMENT A

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

### I.    The Account(s)

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| **Sprint** | **(314) 267-0816**<br><br>(the subject cellular telephone) | Unknown | **Jamore CLARK, Jason JONES, Arie GRAHAM,** and others known and unknown |

### II.    The Provider

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of **Sprint,** and other applicable service providers reflected on the list contained in this Attachment A, including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [4] |
| | Metro Teleconnect | | |

---

[4] Last Update: 09/27/2019

2

## ATTACHMENT B

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

### I.    PRECISION LOCATION INFORMATION

#### A.    Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from **February 19, 2020 to April 3, 2020**, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

#### B.    Information to Be Seized by the United States

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Section(s) 846 and 841(a)(1) (Conspiracy to Possess with Intent to Distribute a Controlled Substance(s) and Possession with Intent to Distribute a Controlled

1

Substance(s)) and other offenses of Federal law (hereinafter referred to as "the subject offenses"),

by **Jamore CLARK**, **Jason JONES**, **Arie GRAHAM**, and others known and unknown.

## II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI") numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

2

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      an engineering map showing all cell site tower locations, sectors and orientations;

(i)      subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

3

(j)     historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD); and,

(k)     Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

## III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.    Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

    a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

    b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to

send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c. IP addresses of any websites or other servers to which the subject cellular telephone connected;

d. Source and destination telephone numbers and email addresses;

e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2. The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace

devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.      Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

6

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

7